CASTLE et al. v. SWEDISH AMERICA MEXICO LINE, Limited.

(District Court, D. Maryland. September 28, 1917.)

SHIPPING ☞108—CONSIGNEES—LIABILITY.

Where the bill of lading provided that the goods should be taken from the ship by the consignee immediately it should be ready to discharge, or transshipped into lighter at the expense of the consignee, a consignee is liable for his just share of the expense of discharging the cargo into ocean-going barges; the consignee furnishing no wharfage facilities and not providing lighters until several days after notified.

In Admiralty. Libel by William A. Castle, Leon Gottheil, and Frank C. Overton, copartners doing business as Castle, Gottheil & Overton, against the Swedish America Mexico Line, Limited. Libel sustained in part; otherwise, dismissed.

Maloy & Brady and George M. Brady, all of Baltimore, Md., for libelants.

Harry N. Abercrombie, of Baltimore, Md., for respondent.

ROSE, District Judge. The libelants are consignees of certain bales of wood pulp. In the bill of lading is found the provision following:

"The goods to be taken from the ship by the consignee immediately the vessel is ready to discharge, and as fast as she can deliver, either night or day, or the same will be transshipped into lighter, or landed, or warehoused, at the expense and risk of the proprietors of such goods."

The vessel arrived in the port of Baltimore on the 22d of last February, and immediately gave notice to the agent of the consignees that it was ready to discharge its cargo. The agent of the consignees failed to provide any berth in which the ship could discharge, nor could she secure any herself. The ship thereupon arranged to have lighters brought alongside, and at 7:30 o'clock on the morning of February 24th began discharging into such lighters. The lighters obtained for this purpose were in fact ocean-going barges, it being impractical on the 24th to obtain any others.

On the afternoon of the 26th, the Baltimore & Ohio Railroad, as agent for the consignees, brought lighters to the ship. As the barges were still engaged in receiving cargo, the lighters were made fast outside of them, and the portion of consignees' goods not already placed on the barges, and there stowed, was carried across them to the lighters. Ultimately the entire consignment came into the possession of the Baltimore & Ohio Railroad.

The ship demanded payment of what it calculated to be the share of the consignees of the expense of delivering the goods upon the barges, and threatened to libel them for such amount. The Baltimore & Ohio Railroad demanded of the consignees payment of what it said was their proportion of the expenses connected with placing the goods on the lighters, and subsequently delivering them on board the cars. The consignees paid both sums under protest, and have brought this libel against the owners of this shipment to recover.

The libelants admit that they cannot maintain their claim in so far as concerns the sum exacted by the Baltimore & Ohio Railroad for its own reimbursement, nor in my view is it any more possible for them successfully to ask for repayment of their fair share of the expenses to which the ship was put in delivering the cargo upon the barges. The provision of the bill of lading seems very clear and express on the point. At this time, when ships are in so great demand, the shipowner is not only justified, but he is required, to use the utmost diligence to take on and discharge cargo with all possible speed. If wharves and berths are crowded, as they are now habitually crowded, the ship must do the best it can to make delivery in other ways. Under such a bill of lading, it cannot be required to wait upon the convenience of the consignees. Its business is to get the cargo out of the ship, so that it can take on another cargo at the earliest possible moment.

Of course, the shipowner, where he employs barges or lighters to take off a cargo belonging to more than one consignee, must fairly apportion the expenses of so doing among those consignees. It appears, as to such apportionment, a mistake has been made to the prejudice of the libelants, and to that extent the libel will be sustained. Its contention that the ship should have waited until the lighters furnished by its agents came alongside before beginning to discharge must be overruled.