**LA TERRITORIAL DE SEGUROS, S. P., Libellant,**

v.

**SHEPARD STEAMSHIP COMPANY, Respondent.**

**No. 19168.**

United States District Court E. D. New York.

April 19, 1954.

288

Purdy, Lamb & Catoggio, New York City, represented La Territorial De Seguros.

Pyne, Lynch & Smith, New York City, represented Shepard Steamship Co.

BRUCHHAUSEN, District Judge.

It was alleged in the libel and complaint herein that thirty-one rolls of rayon cord were turned over at Baltimore, Maryland, to respondent for shipment on the S. S. Minute Man, a common carrier, for delivery by the carrier to the consignee in Buenos Aires; that the respondent breached the contract of carriage and that the libellant, the subrogee of the consignee, sustained damage in the sum of $20,000.

The respondent, by separate defenses, alleged that it was not responsible for loss or damage to cargo arising or resulting from a fire on the vessel, also that the bill of lading restricted damage to a sum not exceeding $500 per package.

Under the bill of lading, Libellant's Exhibit 1, the carrier undertook to transport the goods to the port of consignment in consideration of the payment of the freight charges. None of the rayon rolls was delivered to that port.

The burden was upon the carrier to excuse such delivery by proving that harm to such cargo resulted from a cause for which it was not statutorily liable or that it exercised due diligence to avoid and prevent the harm. American Tobacco Co. v. The Katingo Hadjipatera, D.C., 81 F.Supp. 438.

During the voyage a fire broke out. The vessel put in at the port of New York, arriving there on April 2, 1948, a day after the discovery of the fire. Part of the ship's cargo, including the said rayon rolls, was unloaded and the vessel proceeded to its destination. A general average was declared. The respondent appointed general average adjusters and the latter appointed general average surveyors. The general average report was prepared (Libellant's Exhibit 4). Letters were sent to all shippers, notifying them of the fire and of the general average situation. The shipper of the rayon rolls, by letter, dated April 26, 1948, Respondent's Exhibit G, made claim in the sum of $19,037.35 for the cost of the rayon rolls and expenses. The surveyors made efforts to obtain instructions from the owners of the shipment as to the disposition of the damaged rayon rolls. On May 19, 1948, they were placed in a warehouse. On June 15, 1948, Leighton K. Montgomery & Co., on behalf of the libellant, appointed the said surveyors to act as surveyors for the cargo interest and from that time on the latter acted as agents for the libellant (S.M. 84). After some correspondence, Montgomery & Co., approved the sale of the damaged rayon rolls for the sum of $3,208.48. The net proceeds of sale, amounting to $2,936.54 were credited to the libellant in the general average. The sale was made on December 1, 1948. (Respondent's Exhibit O).

The libellant can be entitled to no compensation for such of the rolls of rayon as were damaged by fire. The carrier is absolved from liability for such damage by the Fire Statute, 46 U.S.C.A. § 182, the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(2) and Rule 3 of the York-Antwerp Rules, all incorporated by reference in the bill of lading.

Furthermore, the libellant can be entitled to no compensation for such of the rolls of rayon as were damaged by water in extinguishing the fire, excepting by way of general average, as provided by Rules 2 and 3 of the York-Antwerp Rules.

The evidence pertaining to the number of rolls of rayon, damaged by fire or by water or otherwise came from the respondent's witness, the surveyor, also from the general average report, and Respondent's Exhibits I and O. It was determined that thirteen of the rolls of rayon, damaged by water were the subject of general average and the contributory amount, payable to the owner of the shipment was fixed at the sum of $9,633.93, itemized as follows:

| | |
|---|---:|
| 13 rolls, damaged by water, 13/31st of $18,907.23, the wholesale value of the 31 rolls | $7,928.94 |
| Less 13/31st of $2,936.54, the proceeds of sale of the 31 rolls | 1,231.45 |
| | $6,697.39 |
| Proceeds of sale of 31 rolls | 2,936.54 |
| | $9,633.93 |

It is clear from the testimony of the surveyor that not more than nineteen of the rolls of rayon were damaged by fire or water, also that his subsequent examination revealed that twelve rolls had dirty wrappers and smoke but no fire in them. (S.M. 95). While there is some indication that he was unable to determine on the preliminary examination the nature or extent of the damage (S.M. 94) he finally admitted that it was then possible to see every part of every roll. (S.M. 104).

The Court is convinced from the testimony that the surveyor did not make a reasonably careful examination of the rayon rolls at the time they were unloaded at the port of New York. His conclusion that all of them constituted a danger is without foundation. In the exercise of reasonable care, he should have segregated those rayon rolls which were in an apparently fit condition for shipment at the time. A reasonably careful examination and segregation would have apprised him of the condition.

The respondent has failed to sustain its burden of establishing a defense for failure to perform its agreement to transport to Buenos Aires that part of

the shipment, consisting of the aforesaid twelve rolls of rayon cord.

The defendant's liability for breach of contract for delivery of the said twelve rayon rolls accrued on the date when they should have arrived at Buenos Aires and the amount of damage is the market value thereof at that time and place. The Merauke, 2 Cir., 31 F.2d 974. The damage may not exceed $500 per package. The respondent's assertion that the consignee or subrogee failed, when requested, to furnish it with instructions for disposition of the rayon rolls, does not relieve it of liability. It was then duty bound and under direction, by the contract of carriage, to deliver the goods at Buenos Aires. The fact that the subrogee through its agent, many months subsequent to the fire, acquiesced in a sale of the rayon rolls likewise did not relieve the respondent of the responsibility it had assumed, other than the reduction of the amount of damages sustained by the libellant to the extent of the net proceeds received from the sale.

The libellant is directed to prepare and submit findings and decree, providing for costs and the appointment of a commissioner to assess the damages.